FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 JAN -7 PM 12:54

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| EDWIN RICHARDS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: CV 01-B-1872-S |
| STANDARD INSURANCE COMPANY, | ) |
| Defendant. | ) |

ENTERED

JAN - 7 2003

### MEMORANDUM OPINION[1]

Currently before the court is a Motion for Summary Judgment filed by defendant, the Standard Insurance Company ("defendant" or "Standard"). Edwin Richards ("plaintiff" or "Richards") filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging Standard unlawfully denied his claim for long term disability benefits. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Standard's Motion for Summary Judgment is due to be granted.

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made some changes to the opinion prepared by defendants' counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.



## I. FACTUAL SUMMARY

Standard is an insurance company based in Portland, Oregon. Standard issued several insurance policies, including a group long term disability ("LTD") insurance policy, to Taft Coal Sales and Associates ("Taft Coal"), a company located in Oakman, Alabama.[2] (Claim File at 314-39.) The LTD policy is an employee welfare benefit plan subject to ERISA (hereinafter "the LTD plan"). (Compl. ¶ 9.) The LTD plan was established by Taft Coal for the purpose of providing long term disability insurance coverage to the employees of Taft Coal, Taft Coal Co., Inc., and DD&J, Inc. ("DD&J"). (Claim File at 318.)

Richards, an employee of DD&J during 1997-1998, participated in the LTD plan. (Pl.'s Br. at 2-3; Claim File at 159.) The effective date of his long term disability coverage under the LTD plan was January 1, 1998. (Claim File at 159.)

On May 4, 1998, Richards filed a claim for disability benefits due to his back problems. (Claim File at 159.) Dr. Martin Jones, Jr. diagnosed the cause of his back problems as lumbar degenerative disk disease. (Claim File at 127.) Richards first noticed this problem in December 1994, and, prior to May 4, 1998, underwent at least two surgeries for this condition, in 1996 and again in April 1998. (Claim File at 159, 129, 69.)

Richards sought both short term and long term disability benefits. Standard approved Richards's claim for short term disability ("STD") benefits, and he began receiving those benefits on May 19, 1998. (Claim File at 155.) To maintain his eligibility for STD benefits, Richards was

---

[2] Hereinafter, references to the Long Term Disability Policy and the Administrative Record will be listed as "Claim File (bates stamp #)."

2

required to submit additional information regarding the nature and extent of his alleged disability as periodically requested by Standard. (Claim File at 155.) Richards, however, did not satisfy this requirement. Despite Standard's requests for further medical documentation, Richards did not provide sufficient information regarding the status of his back condition. (Claim File at 147, 144, 143, 140, 138, 134, 132, 125, 122, 120, 101, 98.) Richards's STD benefits ceased in August 1998 because Standard could not substantiate his disabling condition beyond that date.[3] (Claim File at 143, 123.)

Although Standard discontinued payment of STD benefits to Richards, it investigated his claim for long term disability benefits. Standard continued to have difficulty obtaining sufficient medical information regarding the nature and extent of Richards's alleged back condition. (Claim File at 147, 144, 143, 140, 138, 134, 132, 125, 122, 120, 101, 98.) Standard contacted Richards as well as his doctors on multiple occasions seeking medical information. (Claim File at 123, 125, 120, 99-101, 96.)

On August 25, 1999, Standard received a letter from Richards's attorney. (Claim File at 93.) In that letter, the attorney reiterated the long-term, continuing nature of Richards's back problems, stating that it was his "understanding that [Richards] has had on or about seven prior back surgeries." (Claim File at 93.) The attorney further indicated his intent to submit additional medical documentation that he contended would support an award of STD and LTD benefits. (Claim File at 93.) In response to the letter, Standard informed the attorney that the LTD plan contained a preexisting condition exclusion for policies in effect for less than twelve (12) months. (Claim File

---

[3] Richards's claim for STD benefits, however, is not a part of his claim in this case. (*See* Compl..)

at 90, 320.) Under the terms of the LTD plan, a participant is not entitled to coverage for disabilities caused or contributed to by a preexisting condition unless the participant, on the day he or she becomes disabled:

>   a.  [Has] been continuously insured under the Group Policy for the entire Exclusion Period shown in the **Coverage Features**; and
>   b.  [Has] been Actively At Work for at least one full day after the end of the Exclusion Period.

(Claim File at 329.)

Standard's response letter also stated that its "information shows that the Taft Coal Sales & Associates policy became effective on January 1, 1998 and that Mr. Richards ceased work on March 4, 1998, thus the preexisting condition provision would be applicable." (Claim File at 91.)

On April 4, 2000, a second attorney for Richards forwarded Standard a copy of a vocational disability report regarding Richards. (Claim File at 68.) The vocational report summarized Richards's back problems, stating that his physician's "principal diagnosis [was] lumbar degenerative disk disease." (Claim File at 70-73.) The second attorney's letter also contained a letter from Dr. Cheryl Goyne of the Birmingham Pain Center. (Claim File at 69.) Dr. Goyne's letter indicated that Richards had been a patient of the Pain Center since 1996, that he had a history of six prior back surgeries, and that he suffered from chronic pain syndrome requiring daily narcotics. (Claim File at 69.) After receiving these records, Standard forwarded Richards's file to their LTD division for review. (Claim File at 65.)

As part of the LTD review process, Standard conducted a preexisting condition investigation for the period of October 3, 1997 through December 31, 1997, the ninety (90) days prior to the LTD

plan's January 1, 1998 effective date. (Claim File at 59.) The "Preexisting Condition Exclusion Provision" in the LTD plan states:

> Preexisting condition means a mental or physical condition for which you have done any of the following at any time during the Preexisting Condition Period shown in the **Coverage Features**:
> a. Consulted a physician;
> b. Received medical treatment or services; or
> c. Taken prescribed drugs or medications.

(Claim File at 328-29.)

Among the medical records reviewed by Standard were those of Dr. Martin Jones. His medical records reflect that Dr. Jones had seen Richards for back pain on October 14, 1997, a date within the preexisting condition exclusion period. (Claim File at 116, 59, 57.) Those records further state that Richards had pain associated with a spinal fusion surgery he had undergone in 1996 and, since that time, Richards had received treatment from Dr. Jones. (Claim File at 116-119.) Moreover, Dr. Jones's notes specifically refer to the possibility of removal of the "instrumentation" from Richards's spine. (Claim File at 116.) That procedure eventually occurred when Richards underwent surgery in April 1998, right before he filed his disability claim in May. (Claim File at 113.) Dr. Jones's notes further note Richards's continued use of narcotic pain medication prescribed by Dr. May, stating that stopping such medication would be difficult for Richards because "[h]e has been on it for so long." (Claim File at 116.) Based on this evidence, Standard denied Richards's long term disability benefits claim. (Claim File at 37-42.)

On September 19, 2000, Standard sent Richards's second attorney a lengthy explanation of its denial of Richards's LTD claim. (Claim File at 37-42.) Standard noted in its letter, "Since Mr. Richards did consult with a physician for his back condition and pain medication regimen, the policy

5

excludes payment on his claim. Therefore, his long term disability claim is denied." (Claim File at 39.)

Shortly after receiving this letter, Richards's attorney notified Standard that Richards was appealing the denial of his LTD claim. (Claim File at 35.) She also informed Standard that she would attempt to obtain additional evidence relating to Richards's medical condition. (Claim File at 35.) Standard sent a letter to the attorney on November 30, 2000, advising that it had not received any additional medical documentation from her. (Claim File at 31.) On January 22, 2001, Standard sent a second letter, indicating that it still lacked additional medical documentation. (Claim File at 25.) Standard set a deadline of February 5, 2001, for Richards to submit additional information before the conclusion of his claims review. (Claim File at 25.) When no records were received, Standard forwarded Richards's file to its Quality Assurance Unit for independent analysis on February 8, 2001. (Claim File at 24.)

Acting pursuant to the 'Allocation of Authority' provision under the LTD plan,[4] Laura Gigoux of Standard's Quality Assurance Unit reviewed Richards's claim, and, on March 30, 2001,

---

[4] This provision states:
> [Standard] has full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy. Our authority includes, but is not limited to:
> 1. The right to resolve all matters when a review has been requested;
> 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
> 3. The right to determine:
>    a. Eligibility for insurance;
>    b. Entitlement to benefits;
>    c. Amount of benefits payable;
>    d. Sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.
>
> (Claim File at 332.)

6

informed Richards's attorney of her decision to deny benefits. (Claim File at 13-15.) Gigoux explained that

> [a]s the medical records document Mr. Richards' [sic] consulted a physician and was taking prescribed medications for his lumbar condition during the group policy's 90-day Pre-Existing Condition Period, his condition is a pre-existing condition under the terms of the policy. . . . the LTD policy excludes payment of benefits as Mr. Richard's [sic] had not been continuously insured throughout the 12 month Pre-existing Exclusion Period.

(Claim File at 14.)

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986.) The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed.R.Civ.P. 56(a), (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Standard of Review – ERISA

The court shall review *de novo* decisions of an administrator or fiduciary denying ERISA benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the language of the benefit plan does confer such discretion, "then[,] at a minimum, the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001).

Additionally, the court must determine whether the administrator or fiduciary's interpretation of the terms of the plan is "wrong." *HCA Health*, 240 F.3d at 993; *see id.* at 993 n.23 ("'Wrong' is the label used by our precedent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation."). The court shall look "only to the facts known to the administrator at the time the decision was made to deny [the plaintiff] coverage." *Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547,

1550 (11th Cir. 1994). Should the court find that the particular interpretation is wrong, it conducts a reasonableness analysis of both the claimant's position and the administrator's determination. *Id.* Even if the administrator's interpretation is wrong, it is entitled to deference if the court finds it reasonable. *HCA Health*, 240 F.3d at 994.

Finally, the court ascertains whether the claims administrator acted under a conflict of interest. *Id.* The conflict of interest analysis, however, is conducted only if the decision is deemed to have been wrong. *See Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566 n.12 (11th Cir. 1990) ("It is fundamental that the fiduciary's interpretation first must be "wrong" from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary"). If the court finds a conflict, the claims denial is subject to heightened arbitrary and capricious review. *See HCA Health*, 240 F.3d at 994.

**B. Plaintiff's Claim**

The language of Taft Coal's LTD plan clearly establishes Standard's discretionary authority to administer claims for disability benefits according to the terms of the LTD plan as it interprets them. The applicable policy provision in the LTD plan specifically states that "[Standard] has full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy." (Claim File at 332); *see also Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir. 1999) (finding language in Standard's long term disability policy "clearly confers discretion on Standard to decide whether a claimant is disabled."); *see also Dunn v. Standard Ins. Co.*, 156 F. Supp. 2d 227, 236 (D. Conn. 2001) (finding that "Standard has full discretionary authority under the LTD Plan, and consequently, the highly deferential arbitrary and capricious

9

standard of review applies"); *Andrews v. Standard Ins. Co.*, No. 99 C 2126, 2000 U.S. Dist. LEXIS 5988, *11 (N.D. Ill. April 28, 2000) (noting that "the 'Allocation of Authority' section of [the Standard] Policy outlines a subjective, discretionary standard as to the denial of benefits"). Therefore, the appropriate standard of review is at least arbitrary and capricious.

In this case Standard's denial of benefits was not wrong. Although the standards for calculating whether a determination is wrong are not concrete, the inquiry hinges on whether the court agrees with the benefits decision. *See HCA Health*, 240 F.3d at 993-94 (citing *Marecek v. BellSouth Servs., Inc.*, 49 F.3d 702, 705 (11th Cir. 1995)). Here, it is clear the LTD plan's preexisting condition exclusion compelled the denial of benefits.

Under the terms of the LTD plan, a claimant is not entitled to benefits for disabilities "caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition" unless he or she has been insured under the LTD plan for the duration of the exclusion period (twelve (12) months) and has worked "at least one full day after the end of the Exclusion Period." (Claim File at 319-20, 329). As defined by the LTD plan, a "Preexisting Condition" is a mental or physical condition for which the claimant has "a. Consulted a Physician; b. Received medical treatment or services; or c. Taken prescribed drugs or medications" during the ninety (90) days prior to the effective date of the LTD plan. (Claim File at 319, 328-29).

Here, Richards's coverage under the LTD plan became effective on January 1, 1998. (Claim File at 159). Richards claimed that he became disabled on March 4, 1998. (Claim File at 159). Because the LTD plan had been in effect for less than one year, the plan would not cover Richards's disability if it arose from a preexisting condition. Therefore, Standard conducted a preexisting condition analysis for the ninety (90) day exclusion period of October 3, 1997 through December

31, 1997. Richards's medical records, which had been requested as a part of its analysis, revealed that Richards's claim fell within the policy's preexisting condition exclusion. The records revealed that on October 14, 1997, a date within the exclusion period, Richards consulted Dr. Martin P. Jones, Jr. for treatment of a back condition. (Claim File at 116). This condition was the result of lumbar degenerative disk disease that began in December 1994, and for which Richards underwent spinal fusion surgery in 1996. He continued to see Dr. Jones following the 1996 surgery for resulting back pain and was continuing to take narcotic pain medication prescribed by Dr. May. (Claim File at 116). In April 1998, Richards underwent another surgery to remove rods from his spine that were inserted at the time of his 1996 surgery. (Claim File at 113, 116-18). Following this surgery, Richards filed his claim for disability benefits on the basis of his long term back condition.

From medical records documenting each consultation with Dr. Jones, Standard determined that Richards consulted a physician, received medical treatment or services, and took prescribed drugs or medication during the preexisting condition period – all of which rendered him ineligible for long term disability benefits under the plain terms of the LTD plan. (Claim File at 14, 39). *See Davolt v. Executive Comm. of O'Reilly Auto.*, 206 F.3d 806, 810 (8th Cir. 2000) (applying the plan's language and finding proper the defendant's denial of coverage under preexisting condition exclusion); *Reinert v. Giorgio Foods, Inc.*, 15 F. Supp.2d 589, 594 (E.D. Pa. 1998) (upholding denial of coverage under preexisting condition exclusion and finding "no serious ambiguity in the pre-existing conditions clause of the Plan"). According to the facts known to Standard at the time the denial was made, Richards's claim fell within the preexisting condition exclusion, making him ineligible for benefits. Standard's decision to deny LTD benefits arose from the plain language of the plan and, thus, was not wrong.

The arbitrary and capricious standard imposes a high threshold for finding that a claims administrator's determination is wrong. As the Eleventh Circuit Court of Appeals stated, "[w]e cannot over emphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo*, review is that a court defers to the discretion afforded the claims administrator under the terms of the plan." *HCA Health*, 240 F.3d at 994. Applying the Eleventh Circuit's deferential standard, Standard's denial of long term disability benefits is entitled to deference.[5]

## IV. CONCLUSION

For the foregoing reasons, this court is of the opinion that the Motion for Summary Judgment filed by Standard is due to be granted and plaintiff's action against Standard dismissed with prejudice. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 7th day of January, 2003.

Sharon Lovelace Blackburn
**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[5]The court need not undertake an analysis of the reasonableness of Standard's actions because the court finds Standard's interpretation of the LTD plan and its decision denying benefits were not wrong. Even if the interpretation was wrong, the court would hold that Standard's actions were reasonable. Standard corresponded with Richards numerous times, and allowed him ample time to collect medical evidence and contribute in the review process. Furthermore, in denying his claim, Standard followed the clear directives of the LTD plan.

12